UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMIE MADRIGAL MENDEZ,

      Plaintiff,

      v.

C-TWO GROUP, INC., et al.,

      Defendants.

Case No.  13-cv-05914-HSG

**ORDER CERTIFYING CLASS**

Re: Dkt. No. 64

Before the Court is Plaintiff Jamie Mendez's ("Plaintiff") motion for class certification. Dkt. No. 64-1 ("Mot.").[1]  Plaintiff seeks to certify a damages class under Federal Rule of Civil Procedure 23(b)(3) that includes all individuals who received a text message from a source associated with Defendants C & L Associates Inc. ("C & L") and C-Two Group, Inc. ("C-Two") (collectively, "Defendants") after entering their contact information on a website for a nightclub. Plaintiff contends that these text messages were nonconsensual and were therefore in violation of the Telephone Consumer Protection Act of 1991 (47 U.S.C. § 227) ("TCPA").  Defendants jointly opposed class certification, Dkt. No. 68 ("Opp."), and Plaintiff replied, Dkt. No. 72 ("Reply").

The Court has carefully considered the arguments offered by the parties, both in their written submissions and during oral argument.  For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for class certification and **ORDERS** the parties to meet and confer and submit a stipulation and proposed order directing appropriate notice to the class.

## I.      BACKGROUND

###     A.      The Operative Class Action Complaint

Plaintiff filed her initial complaint, on behalf of herself and others similarly situated, in

---

[1] The Court previously issued a memorandum order certifying the class, Dkt. No. 75, and stated that it would set out its reasoning in more detail in an order to follow.  The Court does so here.

United States District Court
Northern District of California

1   San Francisco Superior Court.  Dkt. No. 1 at 2.  The defendants named in that original complaint

2   jointly removed the action to this Court shortly afterwards.  *Id.*  Plaintiff then filed a first amended

3   class action complaint, which, on motion, the Court dismissed for failure to state a claim under

4   Federal Rule of Civil Procedure 12(b)(6).  Dkt. Nos. 9, 23 & 36.  With leave of the Court, Dkt.

5   No. 40, Plaintiff filed the operative second amended class action complaint against Defendants,

6   alleging that they sent her unsolicited and nonconsensual text messages that sought her patronage

7   at a nightclub in San Francisco called Infusion Lounge ("Club") for over two years.  Dkt. No. 41

8   ¶¶ 13-14.  Plaintiff argues that this conduct violated Section 227 of the TCPA, which proscribes,

9   in relevant part, using an automatic telephone dialing system to contact someone in the United

10  States on their telephone without prior express consent.  *Id.* ¶¶ 27-28.  Plaintiff seeks

11  compensatory and punitive damages, injunctive relief, and attorneys' fees and costs.  *Id.* at 7-8.

12      **B.        Plaintiff's Motion for Class Certification**

13      Plaintiff now moves for class certification.[2]  The facts are largely undisputed.  C & L is the

14  owner of the Club, and it hired C-Two Group as its manager.  Dkt. No. 64-2, Ex. A at 9:9-13,

15  10:12-25 & Ex. B ¶ 2.  C-Two hired the vendor Metrowize, which is not a party to this action, to

16  implement a social media marketing program for the Club.  *Id.* Ex. A at 24:10-12, 34:25-35:3.

17  That program included sending text messages to individuals for whom Metrowize had maintained

18  mobile contact information.  *Id.* at 42:16-43:10.  That information was collected from individuals

19  who signed up to be on a guest list for the Club ("Guest List") on its website and provided their

20  mobile telephone numbers, or who texted the word "INFUSION" to the SMS Short Code 99158

21  ("Club SMS")[3] from their mobile device.   Dkt. No. 68-2 ¶¶ 3-4.  Signing up to be on the Guest

22  List did not require providing a mobile telephone number, *id.* ¶ 7, but texting the Club SMS

23  necessarily provided the sender's number, *see id.* ¶ 4.  A confirmation email was sent when a

United States District Court
Northern District of California

---

[2] In connection with her class certification motion, Plaintiff requests that the Court take judicial notice of the Federal Communications Commission ("FCC") filing entitled *In the Matter of the Petition No. 08-7*.  Dkt. No. 64-15 & Ex. A ("RJN").  The Court denies the RJN because the material identified is irrelevant to class certification.

[3] It is well known that SMS means "short message service" and is a communication platform that allows users to send text messages to mobile devices.  An SMS Short Code is a special telephone number that is shorter than an ordinary 10-digit telephone number and that is capable of sending and receiving text messages.  *See* Mot. at 4-5 nn. 4-5.

1    patron signed up on the Guest List, and a confirmation text was sent when a patron texted the Club

2    SMS.  *Id.* ¶¶ 3-4.  Each text message sent to these numbers included either "Txt STOP to cancel or

3    HELP for help" or "Reply STOP to cancel, HELP for help."  *Id.* ¶ 4.  These texts, like all of the

4    texts at issue, were sent using software developed by the company mobileStorm, Inc, which was

5    previously dismissed as a defendant in this action.  Dkt No. 64-2, Ex. E ¶ 2; Dkt. No. 36.

6           On February 25, 2011, Plaintiff signed up to be on the Guest List for the Club by visiting

7    the Club's website and completing a standard form.  *Id.* Ex. D, Resp. No. 1, Ex. F, Resp. No. 3 &

8    Ex. G at CTW0027.  In completing that form, Plaintiff entered her cellphone number, which was

9    not required for any reason.  Dkt. No. 68-2 ¶ 7 & Ex. B.  In exchange for signing up for the Guest

10   List, Plaintiff received a one-time free or discounted admission to the Club.  Dkt. No. 64-13 ¶ 2 &

11   Ex. A at 1.  She also received a confirmation email.  Dkt. No. 68-2 ¶ 8.  Between May 26, 2011

12   and October 15, 2013, Plaintiff received a total of nineteen texts from the Club.  Dkt. No. 64-13 ¶

13   2 & Ex. A.  Plaintiff testified that she did not consent to receiving any of these texts, *id.* ¶ 3, but

14   admits that she took no action to stop the texts, Dkt. No. 68-4, Ex. A at 44:23-45:13, 47:14-48:23,

15   49:2-50:12, 53:12-54:10, 58:9-59:19.

16          Plaintiff moves to certify a damages class under Rule 23(b)(3).  Mot. at 1.  The proposed

17   class includes: "[a]ll individuals who entered their contact information online through [the Club's]

18   website and were sent a text message from [the Club SMS] that referenced [the Club] from

19   November 5, 2009 through October 15, 2013.  Reply at 1.[4]

20   **II.    LEGAL STANDARD**

21          Rule 23 of the Federal Rules of Civil Procedure governs class actions, including the issue

22   of class certification.  In that respect, "Rule 23 does not set forth a mere pleading standard."  *Wal–*

23   ───────────────

24   [4] Plaintiff previously provided two different class definitions.  In the operative complaint, Plaintiff
     sought to certify a class that includes: "All persons in the United States of America who were sent,

25   to their wireless numbers, unsolicited and un-consented to SMS or MMS messages from C&L
     Associates, Inc. or C-Two Group, Inc. which were solicitations without the recipients' prior

26   express consent within the four years prior to the filing of this Complaint."  Dkt. No. 41 ¶ 24.  In
     her initial moving papers for class certification, Plaintiff sought to certify a class that includes:

27   "All individuals who, from November 5, 2009 through October 15, 2013, entered their contact
     information online through the Club's website and were sent a text message from SMS Short Code

28   99158 that referenced the Club."  Dkt. No. 64 at 1.  The Court discusses these shifts below.

United States District Court
Northern District of California

*Mart Stores, Inc. v. Dukes*, ⸺ U.S. ⸺, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).  A

plaintiff bears the burden of showing that she has met each of the four requirements of Rule 23(a)

and at least one subsection of Rule 23(b).  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180,

1186, *amended by* 273 F.3d 1266 (9th Cir. 2001); *see also Dukes*, 131 S. Ct. at 2551 ("A party

seeking class certification must affirmatively demonstrate [her] compliance with the Rule.").

Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so

numerous that joinder of all members is impracticable; (2) there are questions of law or fact

common to the class; (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class; and (4) the representative parties will fairly and adequately protect

the interests of the class." Fed. R. Civ. P. 23(a).  That is, the class must satisfy the requirements of

numerosity, commonality, typicality, and adequacy of representation to maintain a class action.

*Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).  Further, while Rule

23(a) is silent as to whether the membership of the class must be ascertainable, there is a growing

consensus in this district that the Rule necessarily implies this requirement as well.  *See, e.g., In re*

*High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1178 (N.D. Cal. 2013).

If all four prerequisites of Rule 23(a) are satisfied, a court must also find that the plaintiff

"satisf[ies] through evidentiary proof" one of the three subsections of Rule 23(b).  *Comcast Corp.*

*v. Behrend*, ⸺ U.S. ⸺, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013).  Where the plaintiff

seeks to certify a class under Rule 23(b)(3), she must show that "questions of law or fact common

to class members predominate over any questions affecting only individual members, and that a

class action is superior to other available methods for fairly and efficiently adjudicating the

controversy."  Fed. R. Civ. P. 23(b)(3).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap

with the merits of the plaintiff's underlying claim.'"  *Amgen Inc. v. Conn. Ret. Plans and Trust*

*Funds*, ⸺ U.S. ⸺, 133 S. Ct. 1184, 1194, 185 L. Ed. 2d 308 (2013) (quoting *Dukes*, 131 S. Ct.

at 2551); *see also Mazza*, 666 F.3d at 588 ("Before certifying a class, the trial court must conduct

a rigorous analysis to determine whether the party seeking certification has met the prerequisites

of Rule 23.") (internal marks omitted).  This "rigorous" analysis applies to both Rule 23(a) and

United States District Court
Northern District of California

4

Rule 23(b). *Comcast*, 133 S. Ct. at 1432. District courts considering certifying a class under Rule 23(b)(3) must take a particularly "close look at whether common questions predominate over individual ones." *Id.* (internal marks omitted). But, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194–95. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195. If a district court concludes that the moving party has met its burden of proof under Rule 23, then the court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

## III.   DISCUSSION

Defendants challenge class certification on several grounds. Defendants contend that: (1) the putative class is not ascertainable; (2) Plaintiff does not satisfy the Rule 23(a) requirements because she is not an adequate class representative and her counsel is not adequate class counsel; (3) common issues do not predominate over individual issues; and (4) class treatment is not superior to other methods of adjudication. The Court will address each issue in the context of the overall analysis district courts must conduct to determine the propriety of class certification.

### A.   Ascertainability and Plaintiff's Amended Class Definition

Defendants contend that class certification is inappropriate because Plaintiff's proposed class definition, as set forth in the operative complaint, is not sufficiently ascertainable. Opp. at 4-7. Plaintiff does not defend that class definition. Instead, Plaintiff argues that she permissibly modified the proposed class definition in her moving papers, which mooted the class definition from the complaint, and that the new proposed class definition is ascertainable. Reply at 1-2.

The threshold question is whether Plaintiff is permitted to modify her proposed class definition on motion for class certification. As a general proposition, "[c]ourts, including those in the Ninth Circuit, regularly allow class definitions to be adjusted over the course of a lawsuit." *Brown v. The Hain Celestial Group, Inc.*, No. C 11-03082, 2014 WL 6483216, at *6 (N.D. Cal. Nov. 18, 2014). That said, when a plaintiff needs to amend a class definition, "[t]he usual practice . . . is to revise the complaint." *Id.* Assuming that the class definition set forth in the complaint is not ascertainable, the Court could deny class certification on that basis and permit Plaintiff to

United States District Court
Northern District of California

amend the complaint.  But the law does not require this inefficient result.  *See id.* (permitting Plaintiff to amend the class definition on motion for class certification in the interest of judicial efficiency).  The fact that Plaintiff again modifies the class definition in her reply brief, however, might counsel in favor of refusing to consider that definition if it prejudiced Defendants' opposition.  In the end, because the change is purely stylistic and immaterial to the merits of class certification, Plaintiff's class definition set forth in the reply brief controls the Court's certification inquiry.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 592-93 (N.D. Cal. 2010) (permitting new class definition on reply).

Defendants do not contend that the amended class definition is not ascertainable.  A class is ascertainable if it is defined by "objective criteria" and if it is "administratively feasible" to determine whether a particular individual is a member of the class.  *In re High-Tech.*, 985 F. Supp. 2d at 1178 (internal citations and marks omitted).  Here, membership in the class is clearly defined by two objective criteria: (1) whether an individual entered their contact information on the Club's website; and (2) whether that individual received a text message that referenced the Club.  Reply at 1.  Determining whether an individual meets those two objective criteria is also administratively feasible.  In fact, Defendants have already produced to Plaintiff a list of the persons who meet the first criterion.  Reply at 2 & n.1.  And Defendants agree that they sent text messages to that list of persons.  Dkt. 68-2 ¶ 4.  Accordingly, Plaintiff has shown that the proposed class is ascertainable.

**B.     Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  As discussed above, Defendants have already produced a list of the proposed class members to Plaintiff.  Reply at 2 & n.1.  That list contains the names of 4,878 individuals.  Joinder of all the proposed class members would be impracticable.  *See Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008) ("As a general rule, classes of forty or more are considered sufficiently numerous.")  Numerosity is therefore satisfied.

**C.     Commonality**

A class is certifiable only if "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Even a single common question is sufficient.  *Dukes*, 131 S. Ct. at 2556.  But

United States District Court
Northern District of California

1    the common contention "must be of such a nature that it is capable of classwide resolution—which

2    means that determination of its truth or falsity will resolve an issue that is central to the validity of

3    each one of the claims in one stroke." *Id.* at 2551.  "What matters to class certification . . . is not

4    the raising of common 'questions' – even in droves – but rather the capacity of a classwide

5    proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.*

6    (emphasis in original) (internal citation omitted).

7         Plaintiff contends that there are several sufficient common questions.  These questions are:

8    (1) whether the mobileStorm software that Metrowize used to send the text messages constitutes

9    an "automatic telephone dialing system" under Section 227(b)(1)(A) of the TCPA; (2) whether

10   Defendants could be held vicariously liable for the text messages that Metrowize sent to the

11   proposed class using the mobileStorm software; and (3) whether the proposed class provided

12   "prior express consent" to receive text messages referencing the Club.  Mot at 11-17.  Defendants

13   do not contest that these questions are common among the class and susceptible to class treatment.

14        The Court finds that each of these questions is sufficient to show commonality because the

15   class-wide resolution of each question would generate common answers that would drive

16   disposition of this case.  In fact, courts in this district have previously held class certification is

17   appropriate in TCPA cases that raise these precise issues.  *E.g., Lee v. Stonebridge Life Ins. Co.*,

18   289 F.R.D. 292, 294-95 (N.D. Cal. 2013).  Specifically, whether the mobileStorm software that

19   Metrowize used to send the text messages at issue to the proposed class constitutes an "automatic

20   telephone dialing system" is a prima facie issue under Section 227(b)(1)(A) of the TCPA.  If the

21   software does not qualify, then Defendants would not be liable to the proposed class as a matter of

22   law.  *See id.* at 295.  The same is true of the question whether the proposed class gave "prior

23   express consent" by voluntarily entering their mobile telephone numbers on the Club's website.  If

24   that voluntary action uniformly constitutes consent to the text messages received, then Defendants

25   must prevail on a class-wide basis.  *See id.*  Similarly, class-wide resolution in favor of Defendants

26   is appropriate if they cannot be held vicariously liable for Metrowize's conduct.  *See id.* at 294.

27   Accordingly, there are common questions sufficient to drive class treatment.

28   ///

United States District Court
Northern District of California

**D.     Typicality**

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Id.* (internal citation and quotation omitted). That said, under the "permissive standards" of Rule 23(a)(3), "representative claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Typicality is satisfied here because Plaintiff's claim is at least "reasonably co-extensive" with that of the proposed class. *See Hanlon*, 150 F.3d at 1020.  Plaintiff and the proposed class each entered their information on the Club's website and then received text messages that reference the Club, purportedly injuring them in the same way. *See Hanon*, 976 F.2d at 508.

**E.     Adequacy of Representation**

Rule 23(a)(4) permits class certification only if the "representative parties will fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Adequacy of representation requires two legal determinations: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.  With regard to the first question, class representatives fail to meet the adequacy standard when the "conflicts between the class members are serious and irreconcilable." *Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D. 623, 629 (N.D. Cal. 2005) (citing *Sosna v. Iowa*, 419 U.S. 393, 403 (1975)).  The second question determines whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

Defendants contend that Plaintiff and her counsel would not adequately represent the class.

8

1   Opp. at 12-16.  Specifically, Defendants argue that: (1) Plaintiff and her counsel have a conflict of

2   interest with the proposed class because Plaintiff is her counsel's former paralegal and a current

3   friend of a former attorney there; (2) Plaintiff lacks credibility on issues material to the litigation;

4   and (3) Plaintiff does not understand her fiduciary duties as a proposed class representative.  *Id.*

5       Defendants' most serious argument, in theory, is that Plaintiff and her counsel have an

6   actual conflict of interest with the proposed class.  That conflict purportedly flows from the fact

7   that Plaintiff used to be a paralegal at her counsel's firm and that Plaintiff is currently friends with

8   a former attorney at her counsel's firm.  Dkt. No. 68-4, Ex. A at 55:2-56:15.  These claims are

9   meritless.  A proposed class representative's current and primary employment with proposed class

10  counsel may create a conflict of interest with absent class members, because the proposed class

11  representative's livelihood depends on her employment with class counsel.  *Cf. Krueger v. Wyeth,*

12  *Inc.*, No. 03CV2496, 2011 WL 8971449, at *15 (C.D. Cal. Mar. 30, 2011).  There is plainly no

13  risk of a conflict, however, where the employment was terminated before the litigation began, as

14  here.  That same logic applies with even greater force to Defendants' indictment of Plaintiff's

15  friendship with a former attorney at her counsel's firm.  Even where a plaintiff is "close friends

16  with her [current] counsel," that is not a sufficient basis to create a conflict without something

17  more.  *Kesler v. Ikea U.S. Inc.*, No. SACV 07-568, 2008 WL 413268, at *5 (C.D. Cal. Feb. 4,

18  2008), *superseded by statute on other grounds as recognized by Bateman v. Am. Multi-Cinema,*

19  *Inc.*, 252 F.R.D. 647, 651-52 & n.4 (2008).  Because neither Plaintiff nor her friend currently

20  works for proposed class counsel, the Court finds no disqualifying conflict of interest.

21      Defendants also argue that Plaintiff lacks credibility on issues material to the litigation

22  because during her deposition she was "clearly evasive" when testifying about several issues.

23  Those issues were: (1) when and how she learned about the Club; (2) whether entering her mobile

24  phone number to enroll for the Guest List for the Club was voluntary; and (3) whether she had an

25  unlimited texting plan with her cellphone service provider at the time she received the texts.  Opp.

26  at 13.  Courts in this district have noted that a proposed class representative's credibility may be a

27  relevant consideration with respect to adequacy of representation.  *E.g., Harris v. Vector*

28  *Marketing Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010).  But "[o]nly when attacks on the

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1   credibility of the representative party are so sharp as to jeopardize the interests of absent class

2   members should such attacks render a putative class representative inadequate." *Id.* (quoting

3   *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 177 (S.D.N.Y. 2008)).  Such issues arise only if

4   the representative's credibility is "questioned on issues directly relevant to the litigation or there

5   are confirmed examples of dishonesty, such as a criminal conviction for fraud." *Id.* (quoting *Ross*

6   *v. RBS Citizens, N.A.*, No. 09 CV 5695, 2010 WL 3980113, at *4 (N.D. Ill. Oct. 8, 2010)).

7        In this case, having reviewed Plaintiff's deposition transcript, the Court finds no

8   evidentiary basis for the purported credibility issues claimed by Defendants.  It is unclear why

9   Plaintiff's memory about when and how she first learned about the Club as a college student has

10  any bearing on this case.  Being unable to remember some aspects of one's college experience

11  does not inherently reflect poor credibility.  If Defendants mean to suggest that Plaintiff learned

12  about the Club only in order to receive text messages and then file this lawsuit, there is no

13  evidence in the record to support that contention.  And while Plaintiff may in fact be incorrect

14  about whether she was required to enter her telephone number on the Club's website, or may not

15  have remembered if she had an unlimited texting plan with her carrier, there is no evidence to

16  suggest that Plaintiff was lying about her memory.

17       Defendant also argues that Plaintiff would be an inadequate class representative because

18  she would not understand her fiduciary duties to the absent class members.  "While the Ninth

19  Circuit has never imposed a knowledge requirement on class representatives at the certification

20  stage, some district courts have done so." *Trosper v. Styker Corp.*, No. 13-CV-0607, 2014 WL

21  4145448, at *12 (N.D. Cal. Aug. 21, 2014).  "Because class representatives serve as a guardian of

22  the interests of the class, the representatives must have some minimal familiarity with the

23  litigation, although a detailed understanding of the theories and facts of the case is not required."

24  *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 649 (N.D. Cal. 2007) (internal citations omitted).

25       Defendants contend that Plaintiff does not understand her fiduciary duties to absent class

26  members based exclusively on the following exchange during her deposition:

27            Q.     But I'm asking what your understanding is of being a class

28                   representative.  Other than reviewing documents do you

10

1    have any other understanding of what it means to be a class

2    representative?

3         A.    Understanding my rights.

4    Dkt. No. 68-5 at 62:8-24.  As Plaintiff aptly summarizes, "Defendants argue that Plaintiff is an

5    inadequate class representative because she used the wrong pronoun."  Reply at 13.  There is

6    nothing about this statement that suggests Plaintiff does not have the required "minimal familiarity

7    with the litigation."  *See In re Tableware*, 241 F.R.D. at 649.

8         Accordingly, because Defendants have failed to adduce any real evidence of inadequacy,

9    the Court finds that Plaintiff and her counsel have satisfied the requirements of Rule 23(a)(4).

10   **F.    Predominance**

11        "Considering whether questions of law or fact common to class members predominate

12   begins . . . with the elements of the underlying causes of action."  *Erica P. John Fund, Inc. v.*

13   *Halliburton Co.*, ––– U.S. ––––, 131 S. Ct. 2179, 2184, 180 L. Ed. 2d 24 (2011).  A court must

14   analyze these elements to "determine which are subject to common proof and which are subject to

15   individualized proof."  *In re TFT–LCD*, 267 F.R.D. at 311–13.

16        In this case, Plaintiff asserts on behalf of herself and the proposed class that Defendants

17   have violated Section 227 of the TCPA.  There are three elements to a TCPA claim: "(1) the

18   defendant called a cellular telephone;[5] (2) using an automatic telephone dialing system; (3)

19   without the recipient's prior express consent."  *Meyer v. Portfolio Recovery Assocs., LLC*, 707

20   F.3d 1036, 1043 (9th Cir. 2012).[6]  The Court agrees with Plaintiff, and Defendants do not contest,

21   that common issues predominate in this putative class action.[7]  By definition, the proposed class

22   _____

23   [5] The Ninth Circuit has held that a text message is a call under the TCPA.  *Satterfield v. Simon &*
     *Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009).

24   [6] While some district courts have treated "prior express consent" as an affirmative defense, *see*
     *Van Patten v. Vertical Fitness Group, LLC*, 22 F. Supp. 3d 1069, 1073-78 (S.D. Cal. 2014), that is

25   irrelevant for the purposes of conducting a predominance analysis because claim elements and
     defenses alike can create common questions.  *See Stockwell v. City and Cnty. of San Francisco*,

26   749, F.3d 1107, 1111 (9th Cir. 2014) ("[A] common contention need not be one that 'will be
     answered, on the merits, in favor of the class.'  Instead, it only 'must be of such a nature that it is

27   capable of classwide *resolution*[.]'") (emphasis original) (quoting *Amgen*, 133 S. Ct. at 1191).
     [7] Defendants do argue that they are entitled to judgment as a matter of law because Plaintiff and

28   the proposed class voluntarily provided their mobile contact information.  Opp. at 7-9.  That
     argument is not appropriately addressed at class certification, which the Court already noted in its

United States District Court
Northern District of California

consists of persons who entered their contact information on the Club's website and then received text messages that reference the Club.  This raises three uniform questions of law that are capable of classwide resolution: (1) whether the mobileStorm software that Metrowize used to send those texts constitutes an automated telephone dialing system; (2) whether voluntarily providing contact information on a website constitutes prior express consent; and (3) whether Defendants are vicariously liable for Metrowize's conduct.  In addition, whether the proposed class members entered their contact information on the Club's website and then received a text message about the Club is an issue susceptible to classwide proof.  Those evidentiary questions are likely already resolved: Defendants have produced a list of proposed class members (persons who entered their cellphone number on the Club's website and whom Defendants concede received a text message).  Accordingly, the Court finds that Plaintiff has satisfied the predominance requirement of Rule 23(b)(3).

### G.    Superiority

Rule 23(b)(3) also tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Court must consider four non-exclusive factors in evaluating whether a class action is a superior method of adjudicating plaintiffs' claims: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.  *Id.*; *Zinser*, 253 F.3d at 1190–92.

Plaintiffs contend that class action treatment is superior to other forms of relief because she and the proposed class are each entitled to the same statutory relief.  Mot. at 21.  Further, Plaintiff argues that in balancing the limited amount of those statutory damages—$500 per call, or $1,500 if trebled—with the cost and time of bringing an individual suit, a class action is the only realistic way to achieve redress for these claims.

memorandum order granting class certification.  Dkt. No. 75.  Once an appropriate notice program has been completed, the Court will issue an order on summary judgment.  *See* Dkt. Nos. 84-85.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Defendants contend, however, that Congress did not intend for TCPA claims to be brought

2  in class actions, but instead through individual suits brought in small-claims courts.  Opp. at 9-11.

3  In support of that proposition, Defendants point to a statement made during congressional debate

4  about the bill referencing the hope that the states will "make it as easy as possible for consumers to

5  bring [TCPA] actions, preferably in small claims court."  *See* 137 Cong. Rec. S16204 (daily ed.

6  Nov. 7, 1991) (statement of Sen. Hollings).  Defendants also point to two decisions from district

7  courts in the Third Circuit that concluded a class action was inferior to small-claims adjudication.

8  *See Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 405 (E.D. Pa. 1995) ("A [TCPA] class action

9  would be inconsistent with the specific and personal remedy provided by Congress to address the

10  minor nuisance of unsolicited facsimile advertisements.").  Defendants' argument essentially rests

11  on the premise that either the federal courts do not have federal question jurisdiction to hear TCPA

12  cases or Rule 23 is inapplicable to TCPA cases.

13    The Supreme Court rejected Defendants' precise argument in *Mims v. Arrow Financial*

14  *Services, LLC*, ––– U.S. ––––, 132 S. Ct. 740, 752, 181, L. Ed. 2d 881 (2012).  In that case, the

15  Supreme Court considered a claim that the TCPA divested the federal courts of federal question

16  jurisdiction to hear TCPA claims in favor of state small-claims courts.  132 S. Ct. at 752-53.  The

17  defendant in that case also pointed to Senator Hollings' statement.  *Id.*  In response, the Supreme

18  Court emphasized that "the views of a single legislator, even a bill's sponsor, are not controlling

19  . . . [and] Senator Hollings did not mention federal-court jurisdiction or otherwise suggest that [the

20  TCPA] is intended to divest federal courts of authority to hear TCPA claims."  *Id.* at 752.  And, in

21  concluding that federal courts can hear TCPA cases under federal question jurisdiction, the

22  Supreme Court specifically contemplated that plaintiffs would permissibly bring TCPA cases as

23  class actions.  *Id.* at 753.  In any case, district courts around the nation have repeatedly certified

24  TCPA classes without concern.  *E.g.*, *Lee*, 289 F.R.D. at 294-95.

25    The Court finds that a class action is superior to thousands of individual small-claims

26  cases.  Plaintiff correctly points out that that "[t]he policy at the very core of the class action

27  mechanism is to overcome the problem that small recoveries do not provide the incentive for any

28  individual to bring a solo action prosecuting his or her rights."  *Anchem*, 117 S. Ct. at 2246.  The

fact that Plaintiff could have brought this action in small-claims court has no bearing whatsoever on the propriety of class action treatment under Rule 23(b)(3) unless it is a superior method of adjudication.

### H.      Appointment of Class Representatives and Class Counsel

Because the Court finds that Plaintiff meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiff as class representative.  When a court certifies a class, the court must also appoint class counsel, giving due consideration to:

> (i)     the work counsel has done in identifying or investigating potential claims in the action;
> (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii)   counsel's knowledge of the applicable law; and
> (iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B). In light of the fact that Plaintiff's counsel has experience litigating TCPA claims, *see* Dkt. Nos. 64-9 & 64-12, and given its diligence in prosecuting this action to date, the Court appoints Stonebarger Law APC and Kearny Littlefield LLP as Co-Class Counsel in this case, as requested.

///

///

///

///

///

///

///

///

///

///

///

///

United States District Court
Northern District of California

14

IV.     **CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiff has satisfied all of the requirements for Rule 23(a) of the Federal Rules of Civil Procedure, as well as the requirements of Rule 23(b)(3).  Accordingly, the Court hereby **GRANTS** Plaintiff's motion for class certification and **ORDERS** the parties to meet and confer and submit a stipulation and proposed order regarding a class notice program that comports with the requirements of Rule 23(c) by December 22, 2015.

**IT IS SO ORDERED.**

Dated: December 10, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

15