UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE MADRIGAL MENDEZ,<br>　　　　　Plaintiff,<br>　v.<br>C-TWO GROUP, INC., et al.,<br>　　　　　Defendants. | Case No. 13-cv-05914-HSG<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 104 |

Pending before the Court is the unopposed motion for preliminary approval of class action settlement filed by Plaintiff Jamie Mendez ("Plaintiff"), individually and on behalf of the settlement class as defined herein. Dkt. No. 104 ("Mot."). Plaintiff filed suit against Defendants C-Two Group, Inc. and C&L Associates, Inc. (collectively, "Defendants") for violating the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") by allegedly sending marketing text messages to Plaintiff and the putative class using an automatic telephone dialing system ("ATDS"). The parties have reached a settlement regarding Plaintiff's claim and now seek required court approval of the proposed class settlement.

The Court has carefully considered the arguments of the parties. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for preliminary approval of class action settlement.

## I.  BACKGROUND

### A.  Factual Allegations and Procedural History

Plaintiff filed her initial complaint, on behalf of herself and others similarly situated, in San Francisco Superior Court on November 5, 2013. Dkt. No. 1 at 2. The defendants named in that complaint jointly removed the action to this Court shortly thereafter. *Id.* Plaintiff then filed a first amended class action complaint, which, on motion, the Court dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. Nos. 9, 23 & 36. With leave of the

Court, Dkt. No. 40, Plaintiff filed the operative second amended class action complaint against Defendants, alleging that they sent her unsolicited and nonconsensual text messages that sought her patronage at a nightclub in San Francisco called Infusion Lounge ("Infusion Lounge") for over two years. Dkt. No. 41 ¶¶ 13-14. Plaintiff argues that this conduct violated Section 227 of the TCPA, which proscribes, in relevant part, using an ATDS to contact someone in the United States on their telephone without prior express consent. *Id.* ¶¶ 27-28. On that basis, Plaintiff sought compensatory and punitive damages, injunctive relief, and attorneys' fees and costs. *Id.* at 7-8. Defendants answered the complaint on August 5, 2014. Dkt. No. 48.

On March 13, 2015, Plaintiff moved for class certification. Dkt. No. 64. Defendants jointly opposed, Dkt. No. 68, and Plaintiff replied, Dkt. No. 72. On June 2, 2015, the Court certified the following litigation class pursuant to FRCP 23(b)(3), Dkt. No. 75: "All individuals who entered their contact information online through Infusion Lounge's website and were sent a text message from SMS Short Code 99158 that referenced the Infusion Lounge from November 5, 2009 through October 15, 2013." Dkt. No. 75. On December 10, 2015, the Court issued an accompanying Order Certifying Class stating the Court's reasoning for certifying the class in further detail. Dkt. No. 92.

Plaintiff filed the present motion on August 26, 2016, s*ee* Mot., and the Court held a hearing on October 27, 2016, *see* Dkt. No. 107.

### B. Overview of the Proposed Settlement

The parties executed a class action settlement agreement detailing the provisions of the proposed settlement. Dkt. No. 104, Ex. A. Following the October 27, 2016 hearing, Plaintiff filed an updated settlement agreement, which altered the definition of the term "settlement certificates." *See* Dkt. No. 108-1, Ex. 3. On March 21, 2017, the Court advised the parties of additional deficiencies in the settlement agreement, Dkt. No. 110, and Plaintiff filed a second revised settlement agreement on March 24, 2017, Dkt. No. 111-2, Ex. A ("SA"). The key terms are as follows:

<u>Settlement Class</u>: All individuals who entered their contact information online through Infusion Lounge's website and were sent a text message from SMS Short Code 99158 that

referenced the Infusion Lounge from November 5, 2009 through October 15, 2013. SA ¶ 1.26. The parties have represented that an estimated total of 4,879 persons fall within this class definition, not including individuals who may submit a valid request for exclusion. *See* Dkt. No. 104, Lambert Decl. at ¶ 9.

Relief: Each class member will be directly issued a settlement certificate valued at $10 that can be redeemed for one-time free entry into the Infusion Lounge on any Wednesday, Thursday, Friday, or Saturday on which the Infusion Lounge is open to the public. SA ¶ 1.12. The certificates will be freely transferrable, may not be redeemed for cash, may not be used for anything other than entry into the club, are not gift cards, may only be used once, may be declared void if a valid code is not included on the certificate, and shall expire 365 days after issuance. *Id.* Codes will be directly disseminated to class members following final approval. Mot. at 5. Class members will not need to submit a claim form. *Id.*

Class Certification, Representative, and Counsel: The Court previously certified the class identified here and granted Plaintiff's request for appointment as class representative and Plaintiff's attorneys as class counsel. *See* Dkt. No. 92.

Attorneys' Fees and Costs: The agreement authorizes class counsel to apply to the Court for an award of costs incurred in litigating this case not to exceed $6,500. SA ¶ 8.1. Class counsel shall not seek an award of attorneys' fees. *Id.* Defendants agree not to oppose a request for costs less than or equal to $6,500. *Id.*

Settlement Administration Costs: Defendants will pay the settlement administrator for all costs associated with the settlement, including providing notice, maintaining the settlement website and arranging for the issuance of the settlement certificates. *Id.* ¶ 2.2, 4.2. The parties estimate that the cost of administering the settlement will be $7,000. *Id.* ¶ 2.2.

Incentive Award: The agreement authorizes the named Plaintiff to seek a $500 incentive award for her participation in this lawsuit, which Defendants do not oppose. SA ¶ 8.3-8.4.

Unclaimed Settlement Funds: The agreement provides that unclaimed settlement certificates shall expire 365 days after issuance. *Id.* ¶ 1.12.

Class Notice: A third-party settlement administrator will establish a settlement website

within 21 days and send class notice via direct email within 30 days of the Court's entry of an order granting the motion for preliminary approval. *Id.* ¶ 4.2. The parties attached a revised copy of their proposed class notice to their revised settlement agreement. *See* Dkt. No. 111-2, Exs. 1, 2.

Opt-Out Procedure: Any putative class member who does not wish to participate in the settlement may either (1) opt out via the settlement website, or (2) mail back an opt-out form that will be included in the class notice. SA ¶ 4.5.

Release: Class members who do not opt out of the class will release

> [A]ny and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extracontractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and/or obligations (including "Unknown Claims" as defined below), whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on the TCPA or other federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside the United States, against the Released Parties, or any of them, arising out of the facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged receipt of text messages sent by or on behalf of C-TWO and C&L during the Class Period, including all claims that were brought or could have been brought in the Action, belonging to any and all Releasing Parties.

*Id.* ¶ 1.21.

## II.    CLASS CERTIFICATION, CLASS COUNSEL, & CLASS REPRESENTATIVE

Because no facts that would affect the Court's reasoning have changed since the Court approved the class on December 10, 2015, this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the Order Certifying Class. *See* Dkt. No 92. In addition, the Court incorporates its previous analysis appointing Plaintiff as class representative, and Stonebarger Law APC and Kearny Littlefield LLP as co-class counsel in this case. *Id.* at 14.

## III.   MOTION FOR PRELIMINARY APPROVAL

Having found certification appropriate, the Court considers whether the parties' class action settlement should be preliminarily approved on its substantive terms.

//

**A.     Legal Standard**

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).

"[The] preliminary determination establishes an initial presumption of fairness." *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Courts scrutinize whether the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *Id.* In passing judgment on a proposed settlement, courts lack the authority to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotations marks omitted). However, because the Court certified the class here prior to settlement, the Court need not apply this heightened standard.

**B.     Analysis**

       1.     <u>The Settlement Process</u>

The first factor the Court considers is the means by which the parties settled the action. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (citation omitted).

Here, class counsel believe that the settlement is fair, adequate, and reasonable. Mot. at 11-12. Specifically, the parties assert that the settlement is the result of "intensive arms-length

1    negotiations," including a full-day settlement conference and several telephonic settlement
2    conferences held before Judge Westmore. *See id.*, Lambert Decl. ¶ 12. This strongly suggests the
3    absence of collusion or bad faith by the parties or counsel. *See Chun-Hoon v. McKee Foods*
4    *Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010); *Satchell v. Fed. Express Corp.*, No. 03-cv-
5    2659-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced
6    mediator in the settlement process confirms that the settlement is non-collusive."). Given that the
7    parties reached the present agreement only after investigating the claims and considering the
8    benefit conveyed to the class members in light of the risks of continued litigation, the Court is
9    satisfied that the settlement agreement is not the product of collusion or fraud, but rather is the
10   result of a successful arm's-length negotiation. *Id.* The Court thus finds that this factor weighs in
11   favor of preliminary approval.

### 2. Preferential Treatment

The Court next considers whether the settlement agreement provides preferential treatment to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth.*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grants preferential treatment to class representatives." *Tableware*, 484 F. Supp. 2d at 1079.

By the terms of the proposed settlement agreement, each putative class member will receive a $10 settlement certificate for one-time free entry into the Infusion Lounge on any Wednesday, Thursday, Friday, or Saturday, and the named Plaintiff is authorized to seek a $500 incentive award for her service as class representative. SA ¶¶ 1.12, 8.3. Although the Court will ultimately determine whether Plaintiff is entitled to such an award and the reasonableness of the amount requested, the Court notes that Plaintiff, thus far, has provided no explanation for why she deserves an award substantially greater than the settlement value of the other class members. Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the

action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).  Plaintiff must provide sufficient evidence to allow the Court to "evaluate [named Plaintiff's] award[] individually, using relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  The Court will consider the evidence presented at the final fairness hearing as to these factors and evaluate the reasonableness of any incentive award request.  Nevertheless, because incentive awards are not per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval.  *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis omitted)).

### 3. Settlement Within Range of Possible Approval

The third factor that the Court considers is whether the settlement is within the range of possible approval.  "To determine whether a settlement 'falls within the range of possible approval,' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Schuchardt*, 2016 WL 232435, at *10 (quoting *Tableware*, 484 F. Supp. 2d at 1080).  The Court must not only judge the settlement against the amount a Plaintiff might have recovered had Plaintiff prevailed at trial, nor must the settlement provide 100% of the damages sought to be fair and reasonable.  *See Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998).  The Class Action Fairness Act ("CAFA") allows courts to approve coupon settlements "only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members." 28 U.S.C. § 1712(e).

Here, each class member will receive a $10 Settlement Certificate for one-time free entry into the Infusion Lounge on any Wednesday, Thursday, Friday, or Saturday.  SA ¶ 1.12.  The certificates "shall be freely transferrable, may not be redeemed for cash, may not be used for anything other than entry to the club, [are] not [] gift card[s], shall be used only one time . . . shall expire 365 days after issuance . . . [and] are not redeemable on holidays . . . or for Special

7

Events . . . ." *Id.* The Court finds that these certificates constitute coupons, and that the CAFA standard therefore applies. *See Davis v. Cole Haan, Inc.*, No. C 11–01826 JSW, 2013 WL 5718452 (N.D. Cal. Oct. 21, 2013) (classifying $20 credits toward Defendant Cole Haan's products as coupons where "(1) the customer would have to pay the sales tax on the product; (2) the vouchers may only be used in California stores; (3) the vouchers expire after six months; (4) the vouchers may not be combined with any other voucher or coupon; and (5) a customer would not receive any cash back if they used the voucher to purchase a product that was less than $20."); *Fleury v. Richemont North Am., Inc., No.* C-05-4525 EMC, 2008 WL 328+7154, at *2 (N.D. Cal. Aug. 6, 2008) (relying on CAFA's legislative history to support finding that a settlement providing $100 credits to class members was a coupon settlement); *Dardarian v. OfficeMax North Am., Inc.*, No. 11–cv–00947–YGR, 2014 WL 7463317 (N.D. Cal. Dec. 30, 2014).

The Court also finds that the value of the certificates is substantially lower than their $10 face value for several reasons. First, individuals interested in visiting the Infusion Lounge on Wednesdays, Thursdays, Fridays, or Saturdays could do so for free without a settlement certificate by simply arriving at the Lounge before 10:00 p.m., when the club begins enforcing the cover charge. Similarly, individuals interested in visiting the Infusion Lounge on Wednesdays, Thursdays, or Fridays could do so for free without a settlement certificate by signing up for the guest list and entering before 11:00 p.m. *See* Dkt. No. 108 at 1. Second, while the certificates are transferable, they are only good for one-time use and will expire within 365 days if not used. SA ¶ 1.12. Third, class members' use of the settlement certificates will likely substantially benefit Defendant, since class members may only use the certificates to receive entrance into the Infusion Lounge, where they will then likely spend money on drinks. This is in stark contrast to the total potential recovery under the TCPA, which provides for statutory damages of up to $500 per negligent violation, and would thus yield a maximum potential recovery in excess of $2.4 million if every putative class member were able to recover the maximum amount for negligent receipt of a single text message. *See* Dkt. No. 108 at 2.

Nevertheless, given (1) Plaintiff's counsel's acknowledgment of the substantial unlikelihood that Plaintiff would survive Defendant's motion for summary judgment, Dkt. No.

108 at 2; (2) Plaintiff's counsel's desire to "bring[] any value to the class instead of merely getting the class judgment entered against it," *id.* at 2; and (3) the fact that a similarly *de minimis* TCPA outcome was preliminarily approved by another court in this circuit, *see Malta v. Federal Home Loan Mort. Corp.*, 2013 WL 444619, at *7 (S.D. Cal. Deb. 5, 2013) (preliminarily approving TCPA settlement agreement that would award each class member approximately $2 if all eligible claimants filed claims), the Court finds that the settlement is within the range of possible approval under the present circumstances.

### 4. Obvious Deficiencies

The final factor that the Court considers is whether there are obvious deficiencies in the settlement agreement. While the Court has some concerns about the true value of the settlement certificates and the appropriateness of an incentive award, neither of these concerns is fatal to preliminary approval for the reasons discussed above. The Court therefore finds that this factor weighs in favor of preliminary approval.

*        *        *

Having weighed the relevant factors, the Court finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval.

## IV. PROPOSED CLASS NOTICE PLAN

Class notice in a Rule 23(b)(3) class action must comport with the requirements of due process. "The plaintiff must receive notice plus an opportunity to be heard and participate in litigation, whether in person or through counsel." *Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The notice must be "the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (internal quotation marks omitted). "The notice should describe the action and the plaintiffs' rights in it." *Id.* Rule 23(c)(2)(B) provides, in relevant part:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and

manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Additionally, "an absent plaintiff [must] be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *Philips Petroleum Co.*, 472 U.S. at 812.

Here, the parties have agreed that a third-party settlement administrator will send class notice via email to each class member at their last known email address, as provided by Defendant. SA ¶ 4.2. In addition, within 21 days of preliminary approval, the settlement administrator will develop, host, administer, and maintain a dedicated settlement website. *Id.* Emails that are "bounced back" will not be subject to skip tracing, however, because previous attempts to skip trace 403 class members as a result of "bounce backs" yielded poor results. *Id.* Because the records of the class members in this action consist almost entirely of email addresses and because notice was previously given to class members in this action via email (and 4,476 of the emails did not "bounce back," *see* Dkt. No. 97 at 1; SA ¶ 4.2(a)), the Court finds that this is the best practicable form of notice.

With respect to the content of the notice itself, "[t]he notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members[.]" Fed. R. Civ. P. 23(c)(2)(B). Plaintiff has attached a copy of the proposed class notice to the settlement agreement. Dkt. No. 111-2, Exs. 1, 2. The proposed class notice forms provide the information required by Rule 23(c)(2)(B).

Finally, Plaintiff proposes using Phoenix Class Action Administration Solutions ("Phoenix") to administer the settlement. SA ¶ 1.25. Phoenix will implement the notice program, process any requests for exclusion, objections, comments, and other correspondence from class members, provide weekly reports to the parties' respective counsel, and distribute settlement certificates. *Id.* ¶¶ 1.25, 5.1. The Court finds that Phoenix is qualified to perform the tasks associated with administering the notice outlined in the settlement agreement and therefore

approves Phoenix as the administrator.

## V.  AWARD OF ATTORNEYS' FEES AND COSTS

The agreement authorizes class counsel to apply to the Court for an award of costs incurred in litigating this case not to exceed $6,500. SA ¶ 8.1. Class counsel shall not seek an award of attorneys' fees. *Id.* Defendants agree not to oppose a request for costs less than or equal to $6,500. *Id.*

## VI.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for preliminary approval of class action settlement. The parties are **DIRECTED** to implement the proposed class notice plan.[1] The Court also **SETS** the following schedule:

| Event | Date |
|---|---|
| Deadline to File CAFA Notice | 10 days after Order |
| Deadline to Establish Settlement Website | 21 days after Order |
| Deadline to Send Email Notice to Class | 30 days after Order |
| Deadline to File Attorneys' Fees and Costs Motion (with a standard briefing schedule, if necessary) | 60 days after Order |
| Deadline to File Motion for Final Approval | 60 days after Order |
| Deadline for Class Members to File Objection / Opt Out | 45 days after Notice |
| Deadline for Class Members to File Notice of Intent to Appear at Final Fairness Hearing | 45 days after Notice |
| Deadline for the Parties to File Responses to Any Objections | 80 days after Order |
| Deadline for Claims Administrator to File List of Timely Requests for Exclusion | 80 days after Order |
| Final Fairness Hearing | June 29, 2017 at 2:00 p.m. |

**IT IS SO ORDERED.**

Dated: 3/27/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[1] While Plaintiff provided an updated long-form notice that altered the definition of the term "settlement certificates," Plaintiff failed to update the short-form notice with that definition as well. Plaintiff is therefore instructed to update the short-form notices' "settlement certificates" definition prior to the notice plan's implementation, so that it accurately reflects the days of covered entry into the Infusion Lounge (i.e., Wednesdays, Thursdays, Fridays, or Saturdays). *See* Dkt. No. 111-2, Ex. 1.

11