UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE MADRIGAL MENDEZ,<br>    Plaintiff,<br>  v.<br>C-TWO GROUP, INC., et al.,<br>    Defendants. | Case No. 13-cv-05914-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR COSTS**<br><br>Re: Dkt. No. 114, 115 |

Pending before the Court is the unopposed motion for final approval of class action settlement filed by Plaintiff Jamie Mendez ("Plaintiff"), individually and on behalf of the settlement class as defined herein, Dkt. No. 115, as well as Plaintiff's unopposed motion for an incentive award and reimbursement of costs, Dkt. No. 114. Plaintiff filed suit against Defendants C-Two Group, Inc. and C&L Associates, Inc. (collectively, "Defendants") for violating the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") by allegedly sending marketing text messages to Plaintiff and the putative class using an automatic telephone dialing system ("ATDS"). The parties have reached a settlement regarding Plaintiff's claim and now seek required court approval of the proposed class settlement. Having carefully considered the arguments of the parties, the Court **GRANTS** Plaintiff's motions for the reasons set forth below.

## I. BACKGROUND

### A. Factual Allegations and Procedural History

Plaintiff filed her initial complaint, on behalf of herself and others similarly situated, in San Francisco Superior Court on November 5, 2013. Dkt. No. 1 at 2. The defendants named in that complaint jointly removed the action to this Court shortly thereafter. *Id.* Plaintiff then filed a first amended class action complaint, which, on motion, the Court dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. Nos. 9, 23 & 36. With leave of the

Court, Dkt. No. 40, Plaintiff filed the operative second amended class action complaint against Defendants, alleging that they sent her unsolicited and nonconsensual text messages that sought her patronage at a nightclub in San Francisco called Infusion Lounge ("Infusion Lounge") for over two years. Dkt. No. 41 ¶¶ 13-14. Plaintiff argues that this conduct violated Section 227 of the TCPA, which proscribes, in relevant part, using an ATDS to contact someone in the United States on their telephone without prior express consent. *Id.* ¶¶ 27-28. On that basis, Plaintiff sought compensatory and punitive damages, injunctive relief, and attorneys' fees and costs. *Id.* at 7-8. Defendants answered the complaint on August 5, 2014. Dkt. No. 48.

On March 13, 2015, Plaintiff moved for class certification. Dkt. No. 64. Defendants jointly opposed, Dkt. No. 68, and Plaintiff replied, Dkt. No. 72. On June 2, 2015, the Court certified the following litigation class pursuant to FRCP 23(b)(3), Dkt. No. 75: "All individuals who entered their contact information online through Infusion Lounge's website and were sent a text message from SMS Short Code 99158 that referenced the Infusion Lounge from November 5, 2009 through October 15, 2013." Dkt. No. 75. On December 10, 2015, the Court issued an accompanying Order Certifying Class stating the Court's reasoning for certifying the class in further detail. Dkt. No. 92.

Plaintiff filed a motion for preliminary approval of class action settlement on August 26, 2016, s*ee* Dkt. No. 104, which the Court granted on March 27, 2017, *see* Dkt. No. 112. Plaintiff now seeks final approval of the settlement. Dkt. No. 115.

### B.      Overview of the Proposed Settlement

The parties executed a class action settlement agreement detailing the provisions of the proposed settlement. Dkt. No. 104, Ex. A. Following the October 27, 2016 hearing, Plaintiff filed an updated settlement agreement, which altered the definition of the term "settlement certificates." *See* Dkt. No. 108-1, Ex. 3. On March 21, 2017, the Court advised the parties of additional deficiencies in the settlement agreement, Dkt. No. 110, and Plaintiff filed a second revised settlement agreement on March 24, 2017, Dkt. No. 111-2, Ex. A ("SA"). The key terms are as follows:

Settlement Class: All individuals who entered their contact information online through

Infusion Lounge's website and were sent a text message from SMS Short Code 99158 that referenced the Infusion Lounge from November 5, 2009 through October 15, 2013. SA ¶ 1.26.

Relief: Each class member will be directly issued a settlement certificate valued at $10 that can be redeemed for one-time free entry into the Infusion Lounge on any Wednesday, Thursday, Friday, or Saturday on which the Infusion Lounge is open to the public. SA ¶ 1.12. The certificates will be freely transferrable, may not be redeemed for cash, may not be used for anything other than entry into the club, are not gift cards, may only be used once, may be declared void if a valid code is not included on the certificate, and shall expire 365 days after issuance. *Id.* Codes will be directly disseminated to class members following final approval. Mot. at 5. Class members will not need to submit a claim form. *Id.*

Class Certification, Representative, and Counsel: The Court previously certified the class identified here and granted Plaintiff's request for appointment as class representative and Plaintiff's attorneys as class counsel. *See* Dkt. No. 92.

Attorneys' Fees and Costs: The agreement authorizes class counsel to apply to the Court for an award of costs incurred in litigating this case not to exceed $6,500. SA ¶ 8.1. Class counsel shall not seek an award of attorneys' fees. *Id.* Defendants agree not to oppose a request for costs less than or equal to $6,500. *Id.*

Settlement Administration Costs: Defendants will pay the settlement administrator for all costs associated with the settlement, including providing notice, maintaining the settlement website and arranging for the issuance of the settlement certificates. *Id.* ¶¶ 2.2, 4.2. The parties estimate that the cost of administering the settlement will be $7,000. *Id.* ¶ 2.2.

Incentive Award: The agreement authorizes the named Plaintiff to seek a $500 incentive award for her participation in this lawsuit, which Defendants do not oppose. SA ¶¶ 8.3-8.4.

Unclaimed Settlement Funds: The agreement provides that unclaimed settlement certificates shall expire 365 days after issuance. *Id.* ¶ 1.12.

Class Notice: A third-party settlement administrator will establish a settlement website within 21 days and send class notice via direct email within 30 days of the Court's entry of an order granting the motion for preliminary approval. *Id.* ¶ 4.2. The parties attached a revised copy

of their proposed class notice to their revised settlement agreement. *See* Dkt. No. 111-2, Exs. 1, 2.

Opt-Out Procedure: Any putative class member who does not wish to participate in the settlement may either (1) opt out via the settlement website, or (2) mail back an opt-out form that will be included in the class notice. SA ¶ 4.5.

Release: Class members who do not opt out of the class will release

> [A]ny and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extracontractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and/or obligations (including "Unknown Claims" as defined below), whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on the TCPA or other federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside the United States, against the Released Parties, or any of them, arising out of the facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged receipt of text messages sent by or on behalf of C-TWO and C&L during the Class Period, including all claims that were brought or could have been brought in the Action, belonging to any and all Releasing Parties.

*Id.* ¶ 1.21.

## II. ANALYSIS

### A. Final Settlement Approval

#### i. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would affect the Court's reasoning have changed since the Court approved the class on December 10, 2015, this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the Order Certifying Class. *See* Dkt. No 92. The Court affirms its previous findings and certifies the settlement class.

#### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's

approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above. In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . ."). To assess whether a proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that class members received adequate notice.

     a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class

members, it does not require that each class member actually receive notice. *See Rannis v. Recchia,* 380 F. App'x 646, 650 (9th Cir. 2010) (noting that "due process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice").

The Court finds that the notice and notice plan previously approved by the Court, Dkt. No. 112 at 9-10, was implemented and complies with Rule 23(c)(2)(B). The Court ordered that third-party settlement administrator, Phoenix Settlement Administrators[1] ("PSA"), send class notice via email to each class member at their last known email address, as provided by Defendants. *Id.* In addition, the Court ordered Phoenix to develop, host, administer, and maintain a dedicated settlement website within 21 days of preliminary approval. *Id.* PSA states that class notice was provided as directed, with the establishment of a settlement website on April 17, 2017, and a total of 4,876[2] emails sent to class members on April 26, 2017. *See* Dkt. No. 114-3 ¶¶ 6-7. Of the 4,876 emails disseminated, 569 notices were returned as undeliverable, meaning that 4,307 or 88.3% of the notices sent were successfully delivered. Dkt. No. 114-3 ¶ 8. The parties received no objections to the settlement and no requests for exclusion from the settlement. Dkt. No. 116 ¶¶ 3-4. In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the class members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

### 1. Strength of Plaintiff's Case and Risk of Further Litigation

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator

---

[1] In Plaintiff's motion for preliminary approval of class action settlement, Plaintiff referred to PSA as "Phoenix Class Action Administration Solutions." *See* Dkt. No. 112 at 10.
[2] While class counsel originally represented that an estimated 4,879 people fell within the class, *see* Dkt. No. 104, Lambert Decl. at ¶ 9, PSA has indicated that a total of 4,876 emails were sent to class members, *see* Dkt. No. 114-3 ¶ 7.

6

arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotation omitted).

This action reached settlement before the Court had an opportunity to consider the merits of the claims. Yet Plaintiff would likely face substantial hurdles were she to continue litigating. Specifically, there is a substantial possibility that Defendants would prevail on their motion for summary judgment if the proceedings were to continue, given Defendants' argument that by voluntarily providing Defendants with their phone numbers, Mendez and each member of the class expressly consented to being contacted by Defendants. Dkt. No. 115-1 at 12. Second, Defendants contend that even if the Court denied their motion for summary judgment, they would have pursued decertification of the class "based upon individual issues of consent," which would have led to protracted litigation. *Id.* In light of Defendants' apparent willingness to defend against this action and the strength of Defendants' arguments, Plaintiff would not be guaranteed a favorable result. In reaching a settlement, however, Plaintiff has ensured at least a nominally favorable recovery for the class. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### 2. Risk of Maintaining Class Action Status

In considering this factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. Certifying a class encompassing approximately 4,876 individuals presents complex issues that could undermine certification. In addition, given Defendants' willingness to pursue decertification of the class, this factor also weighs in favor of settlement.

### 3. Settlement Amount

The amount offered in the settlement weighs only slightly in favor of approval. Based on

the facts in the record and the parties' arguments at the preliminary approval and final fairness hearings, the Court finds that the $10 settlement certificates for one-time free entry into the Infusion Lounge on any Wednesday, Thursday, Friday, or Saturday fall "within the range of reasonableness" in light of the risks and costs of litigation. Despite the Court's reservations regarding the coupons—discussed at length in the Court's previous order granting preliminary approval of class action settlement, which the Court incorporates here by reference, *see* Dkt. No. 112 at 7-9—the Court finds the settlement appropriate given (1) Plaintiff's counsel's acknowledgment of the substantial unlikelihood that Plaintiff would survive Defendants' motion for summary judgment, Dkt. No. 108 at 2; (2) Plaintiff's counsel's desire to "bring[] any value to the class instead of merely getting the class judgment entered against it," *id.* at 2; and (3) the fact that a similarly *de minimis* TCPA outcome was at least preliminarily approved by another court in this circuit, *see Malta v. Federal Home Loan Mort. Corp.*, 2013 WL 444619, at *7 (S.D. Cal. Deb. 5, 2013). This factor thus weighs minimally in favor of approval.

### 4. Extent of Discovery Completed and Stage of Proceedings

The Court finds that class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). "Since the inception of this case the parties exchanged substantial formal and informal discovery with each other, consistently discussed the possibility of settlement, including multiple teleconferences wherein they discussed both the substantive issues of the case as well as their perspectives on a potential resolution of the claims at issue," and attended "an in-person settlement conference with Judge Westmore." Dkt. Nos. 104-2 ¶ 8, 114-2 ¶ 7. The Court thus finds that the parties have received, examined, and analyzed information, documents, and materials that sufficiently enabled them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

### 5. Reaction of Class Members

The reaction of the class members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural*

8

*Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class notice, which was served on each class member in accordance with the methods approved by the Court, advised the class of the requirements to object or opt out of the settlement. *See* Dkt. No. 114-3, Exs. A, B. No objections were received and no class members opted out. *See* Dkt. No. 116 ¶¶ 3-4. The Court finds that the absence of objections and opt-outs indicates overwhelming support among the class members and weighs in favor of approval. *See, e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

\*     \*     \*

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the settlement class members received adequate notice. Accordingly, Plaintiffs' motion for final approval of class action settlement is **GRANTED**.

### B. Attorneys' Fees and Costs

In its second unopposed motion, class counsel asks the Court to approve an award of $6,500 in costs. Dkt. No. 114-1. Class counsel also seeks a $500 incentive award for the named Plaintiff for her assistance in this case. *Id.* Class counsel does not seek an award of attorneys' fees, and the $7,000 incurred in settlement administration costs have been paid directly to PSA by Defendants.

#### 1. Attorneys' Costs

Class counsel is entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotation omitted). Class counsel seeks reimbursement of $6,500 in out-of-pocket costs—less than the $7,627.90 in costs class counsel actually incurred. *See* Dkt. No. 114-2 ¶ 11.

9

Plaintiff has submitted the declaration of Richard D. Lambert, a managing partner with class counsel, indicating that class counsel incurred a total of $7,627.90 in litigation-related costs and expenses. *Id.* Yet class counsel did not initially itemize their purported travel expenses incurred during this case to allow the Court to evaluate whether the costs were reasonable and properly expended. *See Gaudin v. Saxon Mortgage Servs., Inc.*, No. 11-CV-01663-JST, 2015 WL 7454183, at *9 (N.D. Cal. Nov. 23, 2015). Consequently, the Court ordered class counsel to file an itemization of class counsel's travel expenses. *See* Dkt. No. 117. Having reviewed the additional documentation, Dkt. No. 118, the Court is satisfied that these costs were reasonably incurred and **GRANTS** in full the motion for costs in the amount of $6,500.

### 2. Incentive Award

Class counsel requests a service award of $500 for named Plaintiff, which Defendants have also agreed to pay, if approved. *See* Dkt. No. 114-1 at 4. "[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases."). They are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quotation omitted). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.* The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Id.* at 977.

Here, the Court finds that Plaintiff added only moderate value to the class. She participated in several interviews, meetings, and telephone consultations with class counsel to discuss the facts of the case, as well as case strategy. Dkt. Nos. 114-1 at 4, 114-6 ¶¶ 4-5. She also

1  assisted in researching and reviewing several filings, "responded to written discovery propounded
2  by Defendants, personally attended an all-day settlement conference, and sat for a deposition."
3  Dkt. No. 114-1 at 5. She estimates spending 34 hours on this case. *Id.* ¶¶ 5-6. The Court also
4  acknowledges that Plaintiff took a risk in pursuing this case, as she risked a potential judgment
5  against her, for which she would have been liable for Defendants' costs. *See Whiteway v. Fedex*
6  *Kinkos Office and Print Srvs., Inc.*, 2007 U.S. Dist. LEXIS 95398, at \*6 (N.D. Cal. 2007).
7  Nevertheless, the Court finds that a $500 service award is reasonable to compensate Plaintiff,
8  particularly in light of the nominal value of the settlement certificates to the class. Accordingly,
9  class counsel's request for an incentive award is **GRANTED** in the amount of $500 for the named
10 Plaintiff.

## II. CONCLUSION

For the foregoing reasons it is hereby ordered that:

1. Plaintiff's Motion for Final Approval of Class Action Settlement is **GRANTED**.
2. Plaintiff's Motion for Reimbursement of Costs is **GRANTED**.
3. Plaintiff's Motion for an Incentive Award in the amount of $500 to be borne by Defendants is **GRANTED**.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. The Court directs the Clerk of the Court to enter Final Judgment consistent with this order, and to close the case. The Court retains jurisdiction over the parties to enforce the terms of the judgment.

**IT IS SO ORDERED.**

Dated: 7/5/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge

11